UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-2008(DSD/FLN)

Robert W. Hasel and
ABCO Research LLC,

Plaintiffs,

v. **ORDER**

Pulpdent Corporation, a
Massachusetts corporation,

Defendant.

David N. Fronek, Esq., Ronald J. Brown, Esq., William A. Dossett, Esq., Christopher A. Young, Esq., Scott A. Marks, Esq. and Dorsey & Whitney, 50 Sixth Street South, Suite 1500, Minneapolis, MN 55402-1498; Theresa K. Hankes, Esq., Dorsey & Whitney, 4 Embarcadero Center, Suite 3400, San Francisco, CA 94111 counsel for plaintiffs.

David A. Davenport, Esq. Marvin C. Ingber, Esq. and Winthrop & Weinstine, 60 South Sixth Street, Suite 3000, Minneapolis, MN 55402-4430, counsel for defendant.

This patent matter is before the court upon the motions of plaintiffs Robert W. Hasel ("Hasel") and ABCO Research LLC ("ABCO") for a partial summary judgment of infringement and to dismiss defendant's defense of inequitable conduct. Also before the court is the motion of defendant Pulpdent Corporation ("Pulpdent") for summary judgment of invalidity of the patents-in-suit. For the following reasons, plaintiffs' motion for partial summary judgment of infringement is granted in part and denied in part, plaintiffs'

FILED MAY 21 2003
Richard D. Sletten, CLERK
Judgment Ent'd. ____
Deputy Clerk's Initials ____

motion to dismiss defendant's defense of inequitable conduct is denied and defendant's motion for summary judgment of invalidity is denied.

**BACKGROUND**

Hasel, a doctor of dentistry, was granted three patents by the United States Patent and Trademark Office ("PTO") for processes he devised for the application of restorative composites to be used by dentists repairing patients' teeth. He and a partner own ABCO, which now holds the patents by assignment. Two of those patents are the subject of the present litigation. Pulpdent makes and markets a similar product under the name "Flows-Rite" that plaintiffs assert infringes the two patents-in-suit.

In the late 1980s, Hasel began working with materials for dental fillings that, unlike silver and thicker paste-type composites, could be applied in a semi-liquid state. He theorized that these "flowable composites" could be more easily applied and were less likely to leave unfilled voids in the part of the tooth being repaired.

Hasel first tried applying a flowable composite to a patient in 1989. In his opinion, the composite failed, because the patient returned within two months for repair and then again later for replacement of the filling. Hasel was also unsatisfied with the method of application he used on the first patient.

Over the next several years, Hasel utilized different compositions and application processes on a number of patients. Throughout that time, he modified the mixture of the composite, changed the size and type of applicator and tried different methods of application.

Hasel's goal was to achieve a composite that was easily applied, would fully fill the void in the tooth and would remain in place while curing.[1] He also intended that the composition, once cured, would last as long as the tooth itself. Hasel hoped the final product could be stored in and applied directly from a syringe-type applicator. The composite had to flow through the tip of the syringe and yet be firm enough once applied that it could be manipulated or layered into the desired shape and position. It was also important that the composite harden relatively quickly, so that it would not become displaced or deformed before hardening.

In October 1994, Hasel became satisfied with the formula for the composite and the method of application and applied for a patent. Patent No. 5,547,379 ("'379") was granted on August 26, 1996. During the prosecution of the '379 patent, the law firm representing Hasel in the patent prosecution withdrew. A dispute had arisen between Hasel and his counsel regarding the introduction

---

[1] Restorative composites often include a liquid resin that hardens the composite when cured by exposure to ultraviolet ("UV") light. The methods set forth in the patents-in-suit incorporate the UV curing process.

of a claim limitation that Hasel denied authorizing. Believing itself in a potentially adverse position to its client, the firm withdrew from the representation. In correspondence with Hasel, the withdrawing firm also noted its inability to obtain from Hasel information it needed to determine whether Hasel was required to disclose to the patent examiner activities he had undertaken prior to submitting the application.

After the '379 patent was granted, subsequent continuation and related applications were also granted. Relative to the motions before the court, Patent No. 5,944,527 ("'527") was granted on August 31, 1999 and Patent No. 6,315,567 ("'567") was granted on November 13, 2001.

Plaintiffs allege that defendant's product Flows-Rite infringes or induces infringement of Claims 1, 7 and 20 of the '567 patent and Claim 6 of the '527 patent. Defendant moves for summary judgment of invalidity. Plaintiffs also move the court to dismiss Pulpdent's defense of inequitable conduct. The motions are addressed in turn.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)); see also Hemstreet v. Computer Entry Systems Corp., 972 F.2d 1290, 1292 (Fed. Cir. 1992)(applying summary judgment standard in patent infringement case). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See Viskase Corp. v. American Nat. Can Co., 261 F.3d 1316, 1324 (Fed. Cir. 2001). The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at

322-23. Using this standard, the court considers the parties' motions for summary judgment in turn.

**II. Plaintiffs' Motion for Partial Summary Judgment**

A claim is infringed if every element or limitation in the claim, or its substantial equivalent, is found to exist in the infringing product or process. See Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994). Thus, summary judgment of infringement is appropriate when no reasonable juror could find that every limitation in the properly construed claim is not also present in the infringing product or method. See Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001) rehearing and rehearing en banc denied. To make that determination, the court must first construe the patent claims in question and then compare then with the allegedly infringing device or process. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).

Proper claim construction is a matter of law for the court. See Vivid Technologies, Inc. v. American Science and Engineering, Inc., 200 F.3d 795, 804 (Fed. Cir. 1999). "Claims are to be construed by the court as they would be understood by persons of skill in the field of the invention." (Id.) Claim construction must be based on intrinsic evidence, including the claim language, written description and prosecution history. See Gart, 254 F.3d at 1339-40. The court may consider extrinsic evidence to assist in its understanding of the claim, but not to vary the established

meaning of the claim. See U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 678 (1942); Mantech Environmental Corp. v. Hudson Environmental Svcs., Inc., 152 F.3d 1368, 1373 (Fed. Cir. 1998).

Courts read 35 U.S.C. § 271(b) broadly and find those who aid, abet or otherwise actively encourage infringement to be liable for any resulting infringement. See Powerlift, Inc. v. Lang Tools, Inc., 774 F.2d 478, 481 (Fed. Cir. 1985).

**A. The '567 Patent, Claim 1**

Plaintiffs move for a summary finding of infringement of Claim 1 of the '567 patent, which states:

> 1. A method for restoring a tooth, comprising:
> (a) applying a bead of a thixotropic restorative composition to a desired location of the tooth with a syringe-type applicator having a tip;
> (b) manipulating the thixotropic restorative composition with the tip of the syringe-type applicator into a desired shape;
> (c) curing said thixotropic restorative composition; and
> (d) repeating acts (a) through (c) to achieve a cured restorative structure of a desired shape on the tooth.

(Brown Decl. Ex. A at col. 12.)

The parties agree that the only issue of claim construction in dispute in Claim 1, or any of the claims in question, is the meaning of the term "thixotropic." Defendant asserts that its product, Flows-Rite, is not thixotropic as that term should be construed in the patents-in-suit. If it is not, plaintiffs cannot

show that every limitation of Claim 1 is present in defendant's process and plaintiffs' motion must fail.

Defendant contends that thixotropic, as applied in the patent, means thixotropic within a limited range of viscosity such that the restorative composition will flow from a syringe when the plunger is depressed, but will not run, drip or sag once applied to the tooth. Defendant claims that Flows-Rite is less viscous than plaintiffs' restorative composition and tends to run after application.[2] (See Lee Aff. Ex. 5; Berk Dep. at 122-25.)

Plaintiffs counter that viscosity is an aspect of thixotropy, not its equivalent. In other words, thixotropy refers to a material's ability to reduce its viscosity under pressure and to return to its original viscosity when the pressure is removed. Plaintiffs argue that Flows-Rite meets this definition because its viscosity is reduced by the application of shear pressure and returns to its previous level once the pressure is eliminated. Plaintiffs assert that Flows-Rite's viscosity is immaterial since Flows-Rite is thixotropic.[3] Thus, plaintiffs argue that the

---

[2] Contrary to defendant's assertion that Flows-Rite runs, Defendant's marketing materials describe the product as "thixotropic" and note that it "stays where placed." (Brown Decl. Ex. J.)

[3] In addition to defendant's product description materials, which state that Flows-Rite is thixotropic, plaintiffs retained an expert who claims that Flows-Rite displays thixotropic characteristics. (See Combe Decl. at 3.)

limitation of thixotropy found in Claim 1 is present in defendant's product.

To construe the term thixotropic, the court first looks at its use within the claim or claims in question. See Interactive Gift Express, Inc. v. Compuserve Inc., 231 F.3d 859, 865 (Fed. Cir. 2000) withdrawn and superseded in part on other grounds. Claim 1 does not define thixotropic, but several characteristics of the thixotropic composition can be inferred from the claim. First, the thixotropic composition must be within a viscosity range such that it can be applied with a syringe-type applicator, that is, it must flow through a syringe when the plunger is depressed. However, Claim 1 does not specify the size or gauge of the needle or lumen of the applicator. Second, the thixotropic composition must be of such viscosity that it forms a bead when dispensed. Third, it must be of sufficiently high viscosity that it can be manipulated with the tip of the applicator into a desired shape after it is applied to the tooth.

The court may also look to the specification for further clarification of claim terms. See Markman, 52 F.3d at 979; Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The '567 patent specification describes the desired thixotropic properties, stating that:

> a composition of the present invention containing colloidal silica forms a thixotropic composition. Because of the hydrogen bonding, such a composition is

> relatively rigid (i.e., viscous). When a stress is introduced in to the composition, such as by shearing, the network is broken up partially, resulting in a less viscous composition. The thixotropic characteristic of the composition renders it very useful for application in tooth restoration. The composition can be injected through a long, thin needle such as a hypodermic needle because when pressure is applied by a syringe plunger to force the composition through the needle, the composition becomes less viscous and is dispensed through the exit opening of the needle. However, once disposed at a desired location (for example, as a generally hemispherical dab less than about 5 mm in diameter or a layer less than about 2 mm in thickness) the composition regains its viscous characteristics and <u>will not run</u> (i.e., drip or flow other [sic] gravitational pull).

(Brown Decl. Ex. A at col. 7 (emphasis added)). The specification notes that the composition is "relatively rigid," it becomes less viscous when forced through the needle and it "regains its viscous characteristics" after application. (<u>Id.</u>) The specification further states that this characteristic "renders it very useful for application in tooth restoration." (<u>Id.</u>)

The court may also consider the prosecution history to construe words and claims. <u>See</u> <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 33 (1966); <u>Markman</u>, 52 F.3d at 979. In the process of obtaining the '527 patent, a related predecessor to the '567 patent, Hasel distinguished his flowable composite from the prior art, which included highly viscous paste composites and very low viscosity liquid cements and resins. (<u>See</u> Second Brown Decl. Ex. A (Amendment and Response) at 9-10.)) Hasel summarized the

significant features of his invention, either "individually or in combination" to include:

> (1) the combination of a restorative composition and a syringe with a relatively small lumen, (2) the method and system of the present invention which enables a restorative composition to be applied directly to the cavity of a tooth through the lumen and (3) a restorative composition exhibiting sufficient thixotropic properties to enable the composition to flow through the needle with a lumen, but yet not run after the composition has been applied to the tooth.

(Id. (Interview Summary at 2 (emphasis added)).

Words in the claim are to be given their ordinary and accustomed meaning unless, as is the case here, the specification and prosecution history indicate that the inventor intended some other meaning. See Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1577 (Fed. Cir. 1993). Thus, claims are to be construed in the context of the patent as a whole. See Markman, 52 F.3d at 979. Based on the claim language, the specification and prosecution history, the court finds that thixotropic, as applied in the patents-in-suit, means more than viscosity that changes under pressure and returns to its original level after the pressure is relieved. The thixotropic nature of the composition called for in the patented method is both useful and distinguishable from prior art because it combines the properties of flowability, manipulability and the ability to stay in place until cured.

Therefore, a particular range of viscosity is implicit in the term thixotropic as used in Claim 1.

Because it is disputed whether Flows-Rite runs after application, a material question of fact exists as to whether Flows-Rite infringes Claim 1 and summary judgment of infringement is inappropriate.

**B. The '567 Patent, Claim 7**

Claim 7 of the '567 patent is a dependent claim, which depends directly from Claim 6. Claim 7 states, "[t]he method of claim 6 including repeating steps (a) through (c) until said hollow is filled." (Brown Decl. Ex. A at col. 12.) Claim 6 states,

> 6. A method for restoring a tooth comprising:
>
> (a) preparing a cavity using a bur to create a hollow;
>
> (b) Applying a thixotropic restorative composition to the hollow using a syringe-type applicator having a tip, wherein said thixotropic restorative composition is applied in a layer less than 2 mm in thickness;
>
> (c) curing the thixotropic restorative composition; and
>
> (d) repeating steps (a) through (c) until a desired shape on the tooth is formed.

(Brown Decl. Ex. A at col. 13.)

Claim 7 requires layering of the thixotropic restorative composition by repeated applications followed by curing. The method expressly requires that the composition be thixotropic and implicitly requires that its viscosity range be such that it can

flow through a syringe-type applicator under pressure. Unlike Claim 1, the claim does not refer to manual shaping. However, in describing the invention, Hasel stated that "once disposed at a desired location (for example, as generally hemispherical dab less than about 5 mm in diameter or a layer less than about 2 mm in thickness) the composition regains its viscous characteristics and will not run...." (Brown Decl. Ex. A at col. 7 (emphasis added)). Claim 6, from which Claim 7 depends, also requires that the layering method be repeated "until a desired shape on the tooth is formed." (Id. at col. 13.) The court finds that Claims 6 and 7 call for a restorative composition that will not run or sag after application. Therefore, a summary finding of infringement of Claim 7 is inappropriate.

**C. The '567 Patent, Claim 20**

Claim 20 states:

> 20. A method for restoring a Class I through Class V dental cavity comprising
>
> (a) preparing the cavity by forming a hollow in the tooth said hollow having a restorative receiving surface for receiving a restorative composition;
>
> (b) dispensing a bead of thixotropic restorative composition to the restorative surface with an applicator having a needle-like tubular structure, wherein the needle-like tubular structure has a bend to facilitate precise delivery of the restorative composition;
>
> (c) curing said restorative composition; and

> (d) repeating steps (a) through (c) until a desired shape is formed on the tooth.

(Brown Decl. Ex. A at col. 14.)

Plaintiffs' motion as to Claim 20 fails for similar reasons. The thixotropic composition must be sufficiently viscous to form a bead upon application and retain its form such that a "desired shape" may be "formed on the tooth." (Id.) Because a fact question exists whether Flows-Rite is sufficiently viscous to form a bead or retain a particular shape before curing, summary judgment is not appropriate as to Claim 20.

**D. The '527 Patent, Claim 6**

The '527 patent was granted in August of 1999 as a continuation of the '379 patent. Claim 6 of the '527 patent depends from Claim 1 of that patent. Claim 1 states:

> 1. A method for restoring a tooth, comprising:
>
> providing a hollow on the tooth having a surface for receiving a restorative composition; and
>
> applying a restorative composition to the surface of the hollow, wherein the restorative composition comprises a curable liquid resin portion and an inorganic filler portion and has a viscosity sufficiently low to permit application to said hollow of the tooth through an applicator with an applicator needle of a size no larger than a 16 gauge needle.

(Brown Decl. Ex. B at col. 12-13.)

Claim 6, the subject of the present motion, states, "[t]he method for restoring a tooth according to claim 1, wherein the step of applying a restorative composition to the surface of the hollow is repeated to provide a desired depth of restorative composition." (Brown Decl. Ex. B at col. 13.)

There is no reference to thixotropy, beading, shaping or manipulability in either Claim 1 or Claim 6 of the '527 patent. Claim 1 simply includes the limitation that the composition have a viscosity sufficiently low to flow through a needle no larger than 16 gauge. Because the court finds every limitation of Claim 6 present in defendant's process as set out in its instructions for use, summary judgment of inducement of infringement of Claim 6 of the '527 patent is appropriate.

**III. Defendant's Motion for Summary Judgment of Invalidity**

Defendant moves for a summary judgment of invalidity, based on the one year statutory bar prohibiting that patenting of inventions "in public use or on sale in this country, more than one year prior to the date of the application for the patent." 35 U.S.C. § 102(b). Because Hasel's initial application was filed October 16, 1994, the statutory bar date is October 16, 1993. Since the subsequent patents are continuations of the '379 patent, to the extent that they cover the same subject material, they benefit from the filing date of the original application and also share the same statutory bar date. See Transco Products Inc. v. Performance

Contracting, Inc., 38 F.3d 551, 555-56 (Fed. Cir. 1994). Defendant contends that the patented methods were in public use and on sale in the United States before October 16, 1993, and the patents are therefore invalid.

Once issued, patents are presumptively valid. See 35 U.S.C. § 282; Canon Computer Sys. Inc. v. Nu-Kote Intern., Inc., 134 F.3d 1085, 1088 (Fed. Cir. 1998). That presumption may be overcome by clear and convincing evidence that the patented device or process was in public use or commercially on sale before the statutory bar date. See 35 U.S.C. § 102(b); Massey v. Del Laboratories, Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997). To prove invalidity by statutory bar, a party must show that the subject of the patent was both commercially offered for sale and ready to be patented before the statutory bar date. See Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998). An invention is ready for patenting when it has been reduced to practice before the critical date, or the inventor has described it with sufficient specificity that one skilled in the art "could practice the invention." Id. at 59. The invalidating conduct must have included every limitation of the patented claim. See Scaltech Inc. v. Retec/Tetra, L.L.C., 178 F.3d 1378, 1383 (Fed. Cir. 1999) rehearing and rehearing en banc denied.

The operation of the statutory bar is negated if the prior use or sale was experimental. See EZ Dock v. Schafer Sys., Inc., 276 F.3d 1347, 1351 (Fed. Cir. 2002). Prior use or sale is

experimental if its purpose is to demonstrate to the inventor that the invention will serve its intended purpose. See id. at 1352 (citing Gould Inc. v. United States, 579 F.2d 571, 583 (Ct. Cl. 1978)). The experimental use exception does not shift the burden from the moving party to the patentee, but evidence of an experimental purpose may prevent a clear and convincing showing that the invention was ready for patenting. See EZ Dock, 276 F.3d at 1351 and 1354-55 (Linn, J. concurring opinion).

It is undisputed that Hasel applied various sealants and restoratives to patients' teeth using methods that arguably anticipated the patents-in-suit as early as 1989. (See Lee Decl. Ex. 4 at 24-5.) Hasel charged the patients his standard fees for the work. (See id. at 204.) However, "[w]hen an inventor can show changes during experimentation that result in features later claimed in the patent application, this evidence is a strong indication that the activities of the inventor negated any evidence of premature commercial exploitation of an invention ready for patenting." EZ Dock, 726 F.3d at 1353. Hasel continued to modify the composition of the restoratives and sealants from 1989 through 1993. As the handling characteristics of the composition changed, different applicators and application techniques were made possible. (See Lee Decl. Ex. 4 at 24-42.)

Reviewing the evidence in the light most favorable to the non-moving party and granting every reasonable inference to that

evidence, the court finds that questions of fact exist regarding the experimental nature of Hasel's work prior to the statutory bar date. See Liberty Lobby, 477 U.S. at 255. Where material questions of fact are in dispute, summary judgment is inappropriate. See Celotex, 477 U.S. at 322. Defendant's motion for a summary judgment of invalidity is therefore denied.

**VI. Plaintiffs' Motion to Strike Defendant's Defense of Inequitable Conduct**

Plaintiffs move the court to dismiss defendant's defense of inequitable conduct on the basis of Rules 9(b) and 12(c) of the Federal Rules of Civil Procedure. Plaintiffs assert that defendant's answer and counterclaim fail to plead inequitable conduct with the degree of particularity necessary to satisfy Rule 9(b). Plaintiffs contend that they are unfairly prejudiced by the alleged lack of specificity.

A patent may be rendered unenforceable by the applicant's inequitable conduct in prosecuting the application. See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 872 (Fed. Cir. 1988). Inequitable conduct may involve intentional misrepresentations or material omissions meant to deceive the patent examiner. See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1318 (Fed. Cir. 2000). Inequitable conduct is "a lessor offense than common law fraud, and includes types of conduct less serious than 'knowing and willful' fraud." Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1069

(Fed. Cir. 1998). Some district courts have held that the heightened pleading standards of Rule 9(b) apply to allegations of inequitable conduct. See Chiron Corp. v. Abbott Laboratories, 156 F.R.D. 219, 221 (N.D. Cal. 1994); see also Samsung Electronics Co., Ltd. v. Texas Instruments Inc., 1996 WL 343330 at *2 (N.D. Tex. Apr. 18, 1996)(listing six district courts that have applied Rule 9(b) to inequitable conduct claims).

Pleadings of fraud and mistake must be set forth with particularity. See Fed. R. Civ. P. 9(b). The Eighth Circuit Court of Appeals has described that requirement as the "who, what, where, when and how" of the alleged misconduct. U.S. ex rel. Costner v. U.S., 317 F.3d 883, 888 (8th Cir. 2002). In the present case, defendant avers:

> On information and belief, the patents in suit are unenforceable due to the inequitable conduct before the U.S. Patent and Trademark Officer of the named inventor, his attorneys, and others involved in the preparation and prosecution of said patents in seeking issuance of the patent by failing to disclose to the Patent and Trademark Office information of which they were aware which was material to the examination of the applications in violation of 37 C.F.R. 1.56, including but not limited to products similar or identical to the claimed invention that had been sold by others more than one year prior to the filing date of Patent No. 5,547,379 and the commercial use of the invention by the inventor more than one year prior to the filing date of Patent No. 5,547,379.

(Young Decl. Ex. B at ¶ 24.)

Discovery was contentious in the present case, with the parties bringing various motions to compel discovery and deposition, to bar testimony, to bar reliance on facts not specified in interrogatories and for sanctions. However, it was not until after the close of discovery that plaintiffs challenged the sufficiency of defendant's pleading. Further, Hasel's exclusive possession of critical information and apparent reluctance to be deposed may have prevented defendant from more fully framing its pleading.[4]

The substance of defendant's claim is sufficiently clear to satisfy the purpose of Rule 9(b). Defendant identified the inventor, alleged prior commercial use that occurred before the statutory bar date and cited the applicable regulation. Bearing in mind that the Rules of Procedure "shall be construed and administered to secure the just ... determination of every action" (Fed. R. Civ. P. 1) and that "pleadings should be so construed as to do substantial justice" (Fed. R. Civ. P. 8(f)), the court finds that defendant's pleading is sufficient under the circumstances of

[4] Defendant's motion to compel deposition of Hasel and for sanctions was granted by order of Magistrate Judge Franklin Noel. (See Doc. No. 38.)

this case.[5] Plaintiffs' motion to dismiss the defense is therefore denied.

**CONCLUSION**

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for summary judgment of infringement (Doc. No. 39) is granted in part and denied in part. The motion is granted as to Claim 6 of the '527 patent and denied as to Claims 1, 7 and 20 of the '567 patent.

2. Defendant's motion for summary judgment of invalidity (Doc. No. 74) is denied.

3. Plaintiffs' motion to dismiss defendant's defense of inequitable conduct (Doc. No. 44) is denied.

Dated: May 20, 2003

David S. Doty, Judge
United States District Court

---

[5] The Court of Appeals for the Federal Circuit commented in dicta that the defense of inequitable conduct is raised too frequently in patent cases. See Burlington Industries, Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988); see also FMC Corp. v. Manitowoc Co., Inc., 835 F.2d 1411, 1415 (Fed. Cir. 1987)(stating that inequitable conduct is not a "magic incantation to be raised as a defense to every patent action). Here, however, defendant has offered sufficient evidence to raise serious questions about Hasel's disclosure of prior art and commercial sales to the PTO.